STELLA HAVKIN, #134334
GEORGEANN H. NICOL, #116054
HAVKIN & SHRAGO
ATTORNEYS AT LAW
20700 Ventura Blvd. Suite #328
Woodland Hills, CA 91364
Telephone: (818) 999-1568
Facsimile:  (818) 305-6040

Attorneys for Plaintiff Wesley H. Avery, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>Meir Asher,<br><br>        Debtor.<br><br>―――――――――――――――<br><br>Wesley H. Avery, Chapter 7 Trustee,<br><br>        Plaintiff,<br><br>   vs.<br><br>T.S.F. Wholesale and T-Shirt Printing, LLC, a California Limited Liability Company. Ilan Asher, an individual<br><br>        Defendants. | CASE NO: 2:11-bk-54302-RN<br><br>Adv. No.: 2:13-ap-01455-RN<br><br>Chapter 7<br><br>WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR:<br><br>(1) TURNOVER PURSUANT TO 11 U.S.C. §542;<br>(2) VALUATION AND PERMISSION TO SELL PURSUANT TO 11 U.S.C. 363(h);<br>(3) PRELIMINARY AND PERMANENT INJUNCTION;<br>(4) DECLARATORY RELIEF; AND<br>(5) ACCOUNTING |

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S COMPLAINT FOR TURNOVER PURSUANT TO 11 U.S.C. §542, VALUATION AND PERMISSION TO SELL PURSUANT TO 11 U.S.C. 363(h); ACCOUNTING; DECLARATORY RELIEF; INJUNCTION

1

Plaintiff, Wesley H. Avery, Chapter 7 Trustee ("Trustee") in his Second Amended Complaint states as follows:

## PARTIES AND JURISDICTION

1. This is an adversary proceeding brought by the Trustee for Turnover pursuant to 11 U.S.C. §542, 11 U.S.C. §544(a)(1), Valuation and Permission to Sell pursuant to 11 U.S.C. 363(h), Injunction, Accounting and Declaratory Relief.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157(b)(1) and 157(b)(2)(A), (E), (N) and (O).  Venue properly lies in this judicial district pursuant to 28 U.SC. §1409 in that the instant proceeding is related to the bankruptcy case presently pending under Title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California.

2. Plaintiff is the duly appointed Chapter 7 Trustee in the above referenced bankruptcy case of the Debtor Meir Asher.

3. Meir Asher ("Debtor") is the debtor in underlying bankruptcy case number 2:11-bk-54302-RN filed on October 25, 2011.

4. Defendant T.S.F. Wholesale and T-Shirt Printing, LLC, ("T.S.F.") is a California Limited Liability Company.  It operates out of the real property located at 123-145 E. 35th Street, Los Angeles, California and which is the subject of the Trustee's adversary proceeding against Debtor Meir Asher and Defendant Ilan Asher, in case number 2:12-ap-01163-RN.  In the aforementioned adversary case, the real property has been commonly referred to as "The Complex." T.S.F. operates out of The Complex.

5. Defendant Ilan Asher, is the Debtor's brother as well as his aka/alias/alter ego.  Defendant Ilan Asher ("Ilan") claims to be a 50% owner of membership shares of T.S.F.  Oded Cohen also claims to have a 50% ownership interest in T.S.F.

6. Ilan's alleged 50% ownership of T.S.F. really belongs to his aka/alter ego/alias Debtor

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

**2**

brother. This allegation is based in part on the prior conduct and admissions of Debtor and Ilan surrounding the 50% acquisition by the faux "Ilan Asher" of the "The Complex." This was accomplished through the Debtor conspiring with Ilan to obtain driver's license number A88221418 from the Department of Motor Vehicles in or around 1989 or 1990.  Such license has the Debtor's picture and fingerprints but Ilan's personal information.  The Debtor testified in his deposition under oath on November 22, 2006, that while at the Department of Motor Vehicles, Ilan applied for a driver's license and gave all his personal information.  Then, when the Debtor and Ilan approached the area where the pictures were being taken for the driver's license, the Debtor had his picture taken and his finger prints were obtained for the purpose of placing them on the driver's license.  On April 11, 2007, the Debtor stipulated on the record before the Honorable Alex Ricciardulli in the case of the <u>People of the State of California vs. Meir Asher</u>, case No. BA314630, that the fingerprints that he used in obtaining his alias/alter ego driver's license in the name of "Ilan Asher", matched his fingers prints on the driver's license in his name, Debtor Meir Asher.

    7.    Thereafter, the Debtor utilized the fake driver's license to open bank accounts, acquired real estate under "Ilan Asher's" name all the while living life in the United States as both Meir Asher and "Ilan Asher."  The Debtor renewed the driver's license several times until it was seized by the family law court judge in 2006.  Specifically, the Debtor took the fraudulent drivers' license to the notary and executed the operative documents for the acquisition of The Complex all the while acting as "Ilan Asher."  Further, the Debtor while acting as alias/aka/alter ego "Ilan Asher" placed his finger print in the notary book which reflected the execution of the Deed of Trust and which was necessary to complete the acquisition of The Complex.  The true identity of "Ilan Asher" that was used to obtain the 50% ownership in The Complex was that of the Debtor.

    8.    The bank statements for the Debtor and Defendant Ilan Asher demonstrate that the Debtor has

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

3

used those accounts interchangeably - paying his bills interchangeably from either the accounts with the name "Meir Asher", "Ilan Asher" or accounts with both of their names on them.

9. In addition to the above referenced conspiracy and identity swap to hide the Debtor's true interest in The Complex, the Debtor by using the above referenced "identity swap", entered into a promissory note and deed of trust in favor of Washington Mutual for the 1471 South Crest Drive, Los Angeles, California property. The Debtor also opened of a bank account under the name "Ilan Asher" with California Bank and Trust and obtained a Grant Deed for Lot 7 of Tract No. 6834, among others.

10. On or about September 26, 2006, the Debtor's former wife, Sigalit Asher aka Sigalit Cohen, filed a Petition to Establish Spousal Claim to Community Estate in the Los Angeles Superior Court under case number BD453602. Said Petition stated that the Debtor created another personal identity using the name "Ilan Asher" in addition to obtaining a social security number, INS number and a California Driver's License with Debtor's picture. She also alleged and has since testified at the trial in this case on October 29, 2014 that the Debtor has held himself out to individuals and companies as "Ilan Asher" for many years. Based on the foregoing as well as significant evidence presented to the Los Angeles Superior Court and after the joinder of "Ilan Asher" in the Debtor's divorce case. The Superior Court entered an order that "Ilan Asher" be joined in the Debtor's Dissolution proceeding and to perform the following: (1) Execute a Promissory Note secured by Deed of Trust payable to Sigalit Asher's attorney; (2) that joined party "Ilan Asher" execute the Promissory Note and Deed of Trust payable to and for the benefit of Sigalit Asher; (3) that joined party "Ilan Asher" pay the mortgage and taxes and pay off the mortgage on 1471 Crest Drive, Los Angeles, California in full by January 1, 2013, and (4) that joined party "Ilan Asher" guarantee the payment of Sigalit's attorney fees, payment of child support arrears, spousal support arrears, costs and fees associated therewith.

11. The Debtor and "Ilan Asher" have allegedly shared 6 addresses between them, including the

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

4

Debtor's residence located at 702 S. Crescent Drive, Beverly Hills, California acquired with a fake power of attorney which itself was obtained with the fake driver's license. This is while the true Ilan Asher, Defendant Ilan Asher, has been permanently residing in Israel and only coming to the United States for visits on a handful of occasions. Defendant Ilan Asher testified under oath at the October 29, 2015 in the trial in this case, that he is not a resident of California and has not lived in the United States in the last 30 years. Despite the fact that Defendant Ilan Asher has lived in Israel for 30 years, the fake "Ilan Asher" has been filing California tax returns claiming to be a resident of California. Further, T.S.F. has been filing tax returns with K-1s being issued to "Ilan Asher" at the address for The Complex and falsely claiming that "Ilan Asher" is a domestic member. In reality, the true member of T.S.F. has always been the Debtor and not Defendant Ilan Asher. Otherwise, the tax returns would have reflected that T.S.F. has a foreign partner -the true Ilan Asher who lives in Israel. Moreover, Defendant Ilan Asher would have had to pay a different amount of taxes based on his true residency. Based on the fact that T.S.F. has been declaring to the taxing authorities that its 50% member is a domestic member, has been filing tax returns since 2001 to the present with such information, and based on the fact that "Ilan Asher" has been receiving K-1s in line with such domestic residence status, the true 50% member of T.S.F. cannot be any one other than the Debtor utilizing the fake name of "Ilan Asher" as he is the only resident of California between him and his foreign resident brother Defendant Ilan Asher.

12. The Debtor failed to list the name of Ilan Asher as his AKA on his bankruptcy petition. He Debtor is affiliated with seventeen different business entities. "Ilan Asher" is affiliated with four entities, all of which the Debtor is also affiliated with. The Debtor failed to list in his bankruptcy schedules, his true interests in the The Complex, and in all the permits and licenses appurtenant to it, its equipment, inventory, fixtures as well as all deposit accounts and deposits related to same. In fact,

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

5

the Debtor failed to list any of his businesses or entities in his original bankruptcy schedules and failed to list the four entities that he and "Ilan Asher" are affiliated with.

13. At the time of the filing of the bankruptcy petition, the Debtor had a legal and/or equitable interest in T.S. F. as well as in all partnership entities and real, personal and intangible property owned by T.S.F. He failed to list his true ownership interest in T.S.F. in his original bankruptcy schedules. He even claimed to be unemployed and not even a manager of T.S.F. Moreover, the Debtor's tax returns show income from partnerships and corporations. He failed to list in his Statement of Affairs, his income from such partnerships and corporations.

14. T.S.F. was created in or around 2000. At which time, T.S.F. supposedly created an Operating Agreement. In its Operating Agreement in Section 6.6 at page 17, the Debtor is listed as the "Tax Matters Member" or "Partner." Pursuant to Internal Revenue Service Publication 3402, which provides guidelines for taxation of limited liability companies, it states in relevant part that:

> "only a **member manager** can represent the LLC as the matters partner under the consolidated audit proceeding section 6221 through 6234. A member manager is any owner of an interest in the LLC who, alone or together with others, has the continuing authority to make the management decisions necessary to conduct the business for which the LLC was formed." [Emphasis added.]

This IRS publication mirrors 26 C.F.R 301.6231(a)(7)(2) which is the IRS Code that provides rules regarding designation or selection of a tax matters partner for a limited liability company.

15. There have been no written amendments to the Operating Agreement which removed the Debtor as the Tax Matters Member. Pursuant to Section 13.11 of the Operating Agreement, all amendments to the agreement and transfers must be in writing. T.S.F.'s accountant Stanley Katz testified at the trial in this case on October 30, 2015 that he has not seen any written amendments to the Operating Agreement removing the Debtor from being the Tax Matters Member. Further, pursuant to Section 8.1 of the Operating Agreement, any transfers of the Debtor's interest in T.S.F.

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

**6**

would have had to have gone through rigorous steps.  No such steps have ever been documented by T.S.F. or anyone.  Thus, since there are no documents supporting the fact that the Debtor's interest in T.S.F. pursuant to his tax matters partner status has ever been transferred, at the time of the filing of the bankruptcy petition, the Debtor remained the Tax Matters Member with the requisite ownership interest in T.S.F.  Moreover, at the trial in this case on October 29, 2014, stated that he did not transfer his membership interests in T.S.F.

16. In around January 5, 2005, the Debtor signed off as a "manager" of T.S.F.  when he entered into the retainer agreement with Jenkins and Gilchrist, LLP, a law firm that was hired to defend and prosecute a major lawsuit against T.S.F. by the Von Dutch Originals, LLC ("Von Dutch Litigation".)  Throughout the retainer agreement, the ownership interest of the Debtor in T.S.F. is further substantiated.  This is especially in light of the fact that the scope of the retainer was stated to be "challenging the efforts of Von Dutch originals, LLC to enter y**our premises** ("The Complex") and possibly **seize some of your goods**."  Moreover, the retainer agreement was addressed to Debtor and it was acknowledged by Jenkins & Gilchrist, LLP in the body of the retainer that Debtor was welcomed individually as their client in connection with the above potential seizure of his goods at "the Complex" and that he may terminate their representation at any time.  The Debtor signed and dated the retainer agreement, and thereby acknowledged the above-referenced terms of engagement.

17. At the trial of the Von Dutch litigation in the United States District Court, it was the Debtor who primarily testified for T.S.F.   At no time was Defendant Ilan Asher ever mentioned as having any ownership interest or for that matter a place at T.S.F.  The Debtor testified at the trial on June 6, 2006, that <u>**that he was an owner of T.S.F.**</u>   Throughout his District Court testimony, the Debtor referred to the T.S.F. business as being his business, referred to the warehouse as being his, referred to the employees as being his employees, among others.  Based on the Debtor's position with T.S.F. and his running of T.S.F., the District Court relied on his opinion of the facts.  The Debtor and T.S.F.

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

7

benefitted by his testimony in District Court which resulted in T.S.F. being awarded a judgment in the approximate sum of $2,300,000.  When it is convenient for the Debtor and T.S.F. to take the position that the Debtor is an owner, they do so.  When the Debtor wants to hide from creditors and the Trustee, he is a lowly manager or even unemployed, living at the mercy of his brother "Ilan Asher" in Beverly Hills with $1,300 in assets.  This is the story that the Debtor advanced in his schedules filed on October 21, 2011 when he filed his bankruptcy case.

18. Even after the Debtor testified in District Court that he was owner, in order to defraud his former wife, the Debtor maintained that he was "only an employee, a manager, but never an owner" of T.S.F.

19. Yet, the Debtor was listed as a manager in the Statement of Information for T.S.F. dated November 17, 2009.  The document was executed by the same firm that represented the Debtor when he filed for bankruptcy and by the same firm that initially represented the Debtor in the Trustee's adversary proceeding against the Debtor and Defendant Ilan Asher in case number 2:12-ap-01163-RN.

20. Since its inception, T.S.F. has operated its lucrative tee-shirt manufacturing and printing business out of "The Complex."   It is a very lucrative company that generates millions of dollars annually.   In May, 2011, Comerica Bank loaned the Debtor's aka "Ilan Asher" and a non-party Oded Cohen $3,300,000 on the basis of T.S.F.'s extremely valuable accounts receivable and assets.  On or about May 2, 2011, in order to obtain the $3,300,000 factoring loan to operate T.S.F., Comerica Bank required that T.S.F. execute a subordination agreement of its leases at The Complex.  The agreement was executed by the Debtor and Eliyahu Cohen.  The subordination agreement was recorded shortly thereafter.

21. At the trial of this case on October 29, 2014, Defendant Ilan Asher testified that he allegedly

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

8

fired the Debtor from being a manager at T.S.F. in 2010. Yet, a year and a half later, on May 2, 2011, the Debtor executed the subordination agreement for the purpose of allowing T.S.F. to obtain a $3,300,000 factoring loan for its operations. When asked by Trustee's counsel why would the Debtor be executing the subordination agreement and other documents in connection with the refinance of The Complex and the factoring loan for T.S.F., Defendant Ilan Asher stated that "he did not know how we got here" and knew nothing of the refinancing of The Complex.

22. The Debtor, who has been represented to be a lowly manager or even one who has been fired from T.S.F., in reality has been living the life of the rich and famous, residing at one of the most expensive streets in the world in Beverly Hills, driving a $100,000 Mercedes, flying first class all over the world, spending thousands of dollars per night at restaurants, jewelry stores, and the like. Most revealing is the fact that the Debtor's largest creditor in his bankruptcy schedules and the creditor, who has since obtained a nondischargeable $1,000,000 judgment against the Debtor, was the London Ritz Casino. The Debtor travelled to London to gamble at the Ritz Casino many times and was able to run up a large amount of debt. A lowly manager of T.S.F., let alone an unemployed individual, would not have the financial ability to travel to London first class, let alone stay in London and gamble at the London Ritz Casino with the kind of money that the Debtor was gambling. It is simply incredible that Defendant Ilan Asher would let his brother live in Beverly Hills, travel first class, drive incredibly expensive vehicles and live the life of the rich and famous, while he himself lives in an apartment in Israel.

23. In or around April, 2013, the Trustee discovered documents that substantiated the Trustee's allegations that at the time of the filing of the Debtor's Bankruptcy the Debtor was one of the owners and a managing member of T.S.F. since its inception, a fact that the Debtor deliberately did not disclose in his schedules. The Trustee has made a demand for turnover of the membership interests of the Debtor on the Debtor, TSF and Defendant Ilan Asher through the filing the Motion for

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

9

Turnover in the main bankruptcy case as well as through the demand upon Debtor's attorneys in the Trustee's adversary case against the Debtor and in the filing of the instant case. The membership and/or economic interests of the Debtor and those of "Ilan Asher" in T.S.F. have not been turned over.

24. Based on T.S.F.'s and Ilan Asher' tax returns, the Trustee seeks the return of distributions made by T.S.F. to "Ilan Asher" as follows:

| Tax Returns | Distributions to "Ilan" |
|---|---|
| 2006 | $ 2,031,225.00 |
| 2007 | $ 325,905.00 |
| 2008 | $ 300,141.00 |
| 2009 | $ 1,731,194.00 |
| 2010 | $ 401,949.00 |
| 2011 | $ 338,108.00 |
| 2012 | $ 22,813.00 |

25. The Trustee also seeks the return of distributions made by T.S.F. to "Ilan Asher" for 2013, 2014 and 2015 according to proof.

26. In discovery in this case, when the Trustee demanded the production of T.S.F.'s basic accounting records such as balance sheets, general ledgers, profit and loss statements, accounts payable and accounts receivable, T.S.F. responded by stating that its computer records crashed and that they did not have a backup drive let alone paper documents reflecting basic financials. This is simply incredible for a company that has routinely generates in excess of $10,000,000 per year, but is in line with conduct of company at the helm of which is the Debtor who has no trouble obtaining a fake driver's license, perpetrating bank and notary fraud. Based on the limited records that the Trustee was able to obtain from T.S.F. and third parties, the Trustee's valuation expert, Adam McArthur, testified at the trial in this case on October 30, 2014 that the value of T.S.F. at the time of

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

**10**

the filing of the bankruptcy petition by the Debtor was approximately $3,600,000. The value of T.S.F. is most certainly significantly higher if true financials were actually produced by T.S.F.

FIRST CLAIM FOR RELIEF
(FOR TURNOVER OF ESTATE PROPERTY TO THE TRUSTEE
PURSUANT TO 11 U.S.C. §542(a) and (e), CALIFORNIA CORPORATIONS CODE
§17250)

27. The Trustee adopts, incorporates by reference and alleges herein each and every allegation contained in Paragraphs 1 through 26, inclusive, of this Second Amended Complaint, as if set forth individually herein.

28. The above referenced and herein incorporated membership interests of the Debtor and his alter ego/alias/aka "Ilan Asher" in T.S.F. is the property of the Debtor's Bankruptcy Estate that the Trustee may use, sell or lease under 11 U.S.C. §363.

29. The Trustee is entitled to turnover of the above referenced membership interests of the Debtor and his alter ego/alia/aka "Ilan Asher" in T.S.F. pursuant to 11 U.S.C. §542(a) and (e).

30. Pursuant to California *Corporations Code* §17250, the Trustee seeks the assignment of all distributions of profits from T.S.F. to which the Debtor, "Ilan Asher" and/or Defendant Ilan Asher, were entitled to pursuant to Debtor's membership interests in T.S.F. The Trustee further seeks the turnover from Defendant Ilan Asher the distributions that he received from 2006 to the present that should have been distributed to the Debtor.

SECOND CLAIM FOR RELIEF
(FOR VALUATION AND SALE OF ESTATE ASSETS PURSUANT TO §363(h) AND
CALIFORNIA CORPORATIONS CODE §17302(b))

31. The Trustee refers to and incorporates herein each and every allegation contained set forth in Paragraphs 1 through 30, inclusive, of this Second Amended Complaint as though fully set forth at length herein.

32. The instant Complaint has initiated an adversary proceeding pursuant to 11 U.S.C. §363(h)

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION,
INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

11

and California *Corporations Code* §17302(b) by which the Trustee seeks to sell or foreclose upon the Debtor's membership and/or economic interests in T.S.F. which are improperly being held under the name of "Ilan Asher", free and clear of any interest of unknown third parties, as well as the claims of Defendant Ilan Asher, and recover the value of the Estate's interest in same.

33. Further, the Trustee alleges that the Debtor's and Defendant Ilan Asher's membership and/or economic interest in T.S.F. are very valuable, that the partition of the interests of the other members in same is impracticable, that the sale of the Estate's undivided interest in such interests would realize significantly less for the Estate than the sale of the company free of the interests of a co-owner and that the benefit to the Estate of the Debtor's interests free of the interests of the a co-owners outweighs the detriment, if any to such co-owners.   Through this Complaint the Trustee seeks to value the Debtor's and his aka/alias/alter ego "Ilan Asher' membership and/or economic interests in T.S.F. and sell them.

### THIRD CLAIM FOR RELIEF
### (FOR PRELIMINARY AND PERMANENT INJUNCTION)

34.  The Trustee refers to and incorporates herein each and allegation set forth in paragraphs 1 through 33, inclusive, of this Second Amended Complaint, as if set forth individually herein.

35.   The Debtor's wrongful conduct of failing to disclose his valuable membership interests in T.S.F., and those of his alter ego/alias/aka "Ilan Asher" and Defendant Ilan Asher's continued receipt of moneys pursuant to those interests, unless and until enjoined and restrained by an order of this Court, will cause great and irreparable injury to the Estate.

36.  The Trustee does not have any speedy or adequate remedy at law for the damages that will be suffered if T.S.F. continues to operate and collect large sums of money based on the Debtor's true membership interests, not distribute them to the Trustee for the benefit of the Debtor's creditors, and continues to spend or alienate the Debtor's membership shares.  Therefore, pursuant to 11 U.S.C. §105, the Trustee asserts that it is necessary to enjoin T.S.F. and Defendant Ilan Asher from engaging

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

**12**

in the alienating of the Debtor's and "Ilan Asher's" membership interests in T.S.F., from issuing additional membership interests in T.S.F. to further dilute the value of the Debtor and "Ilan Asher's" membership interests therein, pending the resolution of the instant case.

## FOURTH CLAIM FOR RELIEF
### (FOR DECLARATORY RELIEF THAT DEBTOR HAS A MEMBERSHIP AND OR OWNERSHIP INTEREST IN T.S.F. AND THAT DEFENDANT ILAN ASHER IS IMPROPERLY HOLDING THE DEBTOR'S INTERESTS IN T.S.F. PURSUANT TO 28 U.S.C. §2201)

37. The Trustee refers to and incorporates herein each and allegation set forth in Paragraphs 1 through 36, inclusive, of this Second Amended Complaint, as if set forth individually herein.

38. The Trustee seeks is now and at all times mentioned herein entitled to sell the membership interests of the Debtor in T.S.F. being held under the name of "Ilan Asher" as well as the real, personal and intangible rights associated with such membership interests.

39. A dispute has arisen and an actual controversy now exists between the Trustee and Defendants concerning the Debtor's and Defendant Ilan Asher's membership or economic interests in T.S.F., and their respective ownership rights and duties concerning T.S.F., and the real, personal and intangible rights associated therewith.

40. The Trustee therefore requests a judicial declaration of the rights and obligations of the parties with regard to their respective interests in T.S.F., and the real, personal and intangible rights associated therewith.

## FIFTH CLAIM FOR RELIEF
### (FOR ACCOUNTING)

41. The Trustee refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 40, inclusive, of this Second Amended Complaint as though fully set forth at length herein.

42. T.S.F. is in exclusive possession of the books, records and accounts that will disclose the location of the Debtor's, "Ilan Asher's and Defendant Ilan Asher's membership interests and value

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

13

thereof based on T.S.F.'s accounts receivable, banking records, equipment and inventory.

43. The Debtor with the assistance of T.S.F., and Defendant Ilan Asher has been improperly hiding the membership interests and moneys derived. The Trustee needs an accounting of the true records of T.S.F. such as its accounts receivable, accounts payable, inventory list, profit and loss statements, balance sheets, the moneys received by Defendant Ilan Asher as well as what has happened to the moneys that the Debtor was entitled to receive and how much is left. This is not possible without an accounting. Thus, the Trustee has filed the instant adversary proceeding to seek such an accounting.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Wesley H. Avery Chapter 7 Trustee prays for a judgment against Defendants T.S.F. and Ilan Asher as follows:

ON PLAINTIFF'S FIRST CLAIM FOR RELIEF:

1. For turnover of the above referenced membership interests in T.S.F. of the Debtor improperly being held in the name of "Ilan Asher", pursuant to 11 U.S.C. §542(a) and (e) and for turnover of the real, personal and intangible rights associated therewith;

2. For assignment of all distributions of profits to which the Debtor was and is entitled to in line with his true membership interests in T.S.F. pursuant to California Corporations Code §17250 and for the turn over from Defendant Ilan Asher of all distributions that he has improperly received which should have been distributed to the Debtor.

ON PLAINTIFF'S SECOND CLAIM FOR RELIEF:

1. For a valuation of the Debtor's true membership and/or economic interests in T.S.F.

2. For an order authorizing the Trustee to sell or foreclose upon Debtor's membership or economic interests in T.S.F. and the real, personal and intangible rights associated therewith being improperly held in the name of "Ilan Asher", free and clear of any interest of unknown third parties,

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

**14**

Defendant Ilan Asher as well as recover the value of the Estate's interest in same interests in pursuant to California Corporations Code §17302 and 11 U.S.C. §363(h).

ON PLAINTIFF'S THIRD CLAIM FOR RELIEF:

3.  For an injunction enjoining T.S.F., the Debtor and Defendant Ilan Asher from alienating, selling or otherwise devaluing the Debtor's and "Ilan Asher's" membership shares in T.S.F. improperly being held under the name of "Ilan Asher's" as well as enjoying any of the co-members from issuing additional membership interests in T.S.F. to further dilute the value of the Debtor's true membership shares and those improperly being held in the name of "Ilan Asher."

ON PLAINTIFF's FOURTH CLAIM FOR RELIEF:

4.  For a judicial declaration of the rights and obligations of the parties with regard to their respective interests in T.S.F. and the real, personal and intangible rights associated therewith, for a judicial declaration that the Debtor has an ownership interest in T.S.F., that such ownership interest is being improperly held under the name of "Ilan Asher", and that the Debtor has an ownership interest in T.S.F.'s assets based on his ownership interest in T.S.F.. Further, for a judicial declaration that by virtue of the Debtor's filing of his bankruptcy petition, the Debtor's interests in T.S.F. are the property of the Debtor's Bankruptcy Estate;

ON PLAINTIFF'S FIFTH CLAIM FOR RELIEF:

5.  For an order requiring Defendants T.S.F. and Ilan Asher to turn over the Debtor's true membership interests in T.S.F., to turn over T.S.F's accounts receivable, accounts payable, equipment and inventory list, profit and loss statements, balance sheets as well as an accounting of the moneys received by Defendant Ilan Asher from 2006 to the present so that the Trustee can conduct an accurate accounting.

6.  For costs of suit incurred herein;

7.  For an order awarding Plaintiff such additional relief as this Court deems just and equitable.

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

**15**

Dated: June 6, 2015         HAVKIN and SHRAGO

By: /s/ Stella Havkin_____

Stella Havkin
Attorneys for Plaintiff
Wesley H. Avery Chapter 7 Trustee

WESLEY H. AVERY, CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR TURNOVER, VALUATION, INJUNCTION; DECLARATORY RELIEF AND ACCOUNTING

**16**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

20700 Ventura Boulevard, Suite 328, Woodland Hills, CA 91364

A true and correct copy of the foregoing document entitled (*specify*): Plaintiff Wesley H. Avery Chapter 7 Trustee's Second Amended Complaint

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/06/2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

wamiracle6@yahoo.com, jmoattrustee@gmail.com;C117@ecfcbis.com; wavery@7trustee.net
havkinlaw@earthlink.net; stella @havkinandshrago.com
jkreis@attglobal.net
ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) 06/06/2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Richard Neiter
United States Bankruptcy Judge
255 E. Temple Street, Suite 1682
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/06/2015 | Stella Havkin | /s/ Stella Havkin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*     **F 9013-3.1.PROOF.SERVICE**